JESSICA K. PRIDE (SBN 249212)
jpride@pridelawfirm.com
DANTE PRIDE (SBN 262362)
dpride@pridelawfirm.com
THE PRIDE LAW FIRM
2831 Camino Del Rio S., Suite 104
San Diego, CA 92108
Telephone: (619) 516-8166
Facsimile: (619) 785-3414
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.A.,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA (FEDERAL BUREAU OF PRISONS); RAY J. GARCIA; DARRELL SMITH; ISAAC VENEGAS; and DOES 1-25, inclusive,<br><br>    Defendants. | CASE NO.<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.    Beginning in approximately 2020, Defendant Isaac Venegas ("VENEGAS"), a correctional officer at Federal Correctional Institution – Dublin ("FCI Dublin") owned and operated by Defendant the United States of America (Federal Bureau of Prisons) ("United States"), sexually assaulted Plaintiff J.A., a minimum-security inmate, in violation of federal and state law.

2.    Beginning in approximately 2020, Defendant Darrell Wayne Smith ("SMITH"), also known as "Dirty Dick Smith," a correctional officer at FCI Dublin, owned and operated by the United States, sexually abused Plaintiff J.A., a minimum-security inmate, in violation of federal and state law.

3.     Congress enacted the Prison Rape Elimination Act in 2003, 34 U.S.C. § 30301, *et seq.* ("PREA") to establish national standards for preventing precisely this kind of sexual abuse from happening to federal inmates. Under PREA, the U.S. Department of Justice promulgated detailed regulations that provide precise procedures that prisons must follow. The Federal Bureau of Prisons ("BOP") adopted PREA policies in response to these regulations.

4.     Defendants VENEGAS and SMITH, correctional officers at FCI Dublin, repeatedly subjected Plaintiff to sexual abuse. In doing so, Defendant violated Plaintiff's Constitutional rights and California law on gender violence, sexual assault, and common law on battery.

5.     Defendant RAY J. GARCIA ("GARCIA") was the associate warden at FCI Dublin between December 2018 and November 2020, and the warden of FCI Dublin from November 2020 to July 2021 – the entire period that Plaintiff was being abused by Defendants VENEGAS and SMITH. As the warden, GARCIA was responsible for safekeeping, care, protection, discipline, programming, and release of inmates incarcerated at FCI Dublin. GARCIA was also responsible for hiring, training, and supervising/managing staff, and determining operating procedures and policies.

6.     Defendant GARCIA was also arrested and charged with sexual abuse of a ward based on his sexual abuse of multiple female inmates at FCI Dublin. He was found guilty of three counts of having sexual contact with an incarcerated person, four counts of abusive sexual contact, and one count of lying to the FBI. Defendant GARCIA was sentenced to 5 years and 10 months in prison.

7.     Defendant GARCIA led training on the Prison Rape and Elimination Act and chaired the audit of FCI Dublin under the PREA. Thus, the man responsible for reporting incidents to the government and teaching inmates how to report rape was in fact a serial rapist of inmates.

8.     Defendant GARCIA knew or should have known that the other

1    correctional officers under his supervision were sexually assaulting inmates.

2        9.    Defendant GARCIA knew or should have known that inmates

3    complained about the assaults and were subjected to retaliation. PREA guidelines

4    and FCI Dublin policies and procedures required all inmate complaints of sexual

5    assault and sexual abuse filed or reported internally be reported to Defendant

6    GARCIA. During GARCIA's tenure, complaints of sexual assaults of inmates by

7    correctional officers and/or staff were reported.

8        10.    Defendant GARCIA failed to protect the inmates and turned a blind

9    eye. Such behavior set the tone for rape culture at FCI Dublin, garnering Garcia and

10   his subordinate correctional officers and employees the nickname – "the Rape

11   Club."

12       11.    As a result of Defendants' actions, Plaintiff suffered numerous

13   emotional injuries and incurred severe personal injuries, which continue to affect

14   her today.

15       12.    Plaintiff brings this civil action and asserts claims: (1) against

16   VENEGAS, SMITH, GARCIA, and DOES 1-25, inclusive, under the Eighth

17   Amendment's Cruel and Unusual Punishment Clause (Excessive Force) and

18   California's gender violence and sexual assault statutes (Civil Code §§ 52.4 and

19   1708.5); (2) against VENEGAS under California's battery statute; (3) against

20   GARCIA and Does 1-25, inclusive, under the Eighth Amendment's Cruel and

21   Unusual Punishment Clause (Deliberate Indifference); (4) against the United States

22   under the Fifth Amendment's Due Process Clause (Procedural Due Process); and

23   (5) against the United States under the Federal Tort Claims Act (28 U.S.C. §§

24   1346(b), 1671-2680) ("FTCA") for various tort claims against all Defendants

25   arising under California common law committed within the course and scope of

26   their federal office or employment.

27       13.    For these violations, Plaintiff seeks nominal, compensatory, and

28   punitive damages, attorneys' fees and costs, and any other relief that the Court

THE PRIDE
LAW FIRM

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

deems appropriate.

## JURISDICTION AND VENUE

14.     Plaintiff's claims arise under the United States Constitution, California statutory law, California common law, and the FTCA. The Court has diversity jurisdiction over Plaintiff's entire action under 28 U.S.C. § 1332 because Plaintiff and Defendants are diverse in citizenship and more than $75,000 is in controversy. The Court also has federal question jurisdiction over Plaintiff's Constitutional claims and FTCA claims (which have been administratively exhausted) under 28 U.S.C. § 1331. And the Court has supplemental jurisdiction over Plaintiff's California statutory and common-law claims under 28 U.S.C. § 1367 because these state-law claims arise from a common nucleus of operative fact with Plaintiff's federal question claims.

15.     The Court also has personal jurisdiction over Defendants. The Court has general jurisdiction over Defendants because, on information and belief, each Defendant is a citizen of, and domiciled in, California. The Court has specific jurisdiction over Defendants because they committed the actions and omissions forming the basis for each claim against them in California.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1402(b). As noted above, Defendants' actions and omissions that give rise to Plaintiff's claims all occurred in this District, at FCI Dublin, located at 5701 8th St., Dublin, California 94568.

## INTRADISTRICT ASSIGNMENT

17.     Pursuant to Civil Local Rule 3-29(d), Plaintiff's action is properly assigned to the San Francisco Division of this District because the action arises from actions and omissions taken in Alameda County, California, where FCI Dublin is located.

1

## **PARTIES**

2      18.    Plaintiff is an individual and citizen of Fresno, California. During the

3   relevant period, Plaintiff was incarcerated at FCI Dublin in Dublin, California.

4      19.    Upon information and belief, Defendant VENEGAS is an individual

5   and citizen of California, where he is domiciled. During the relevant period,

6   VENEGAS worked as correctional officer at FCI Dublin in the Bureau of Prison's

7   (BOP's) employment. While performing the acts and omissions that Plaintiff

8   alleges in this complaint, VENEGAS was acting within the scope of his official

9   employment, or with the BOP's permission and consent.

10     20.    Upon information and belief, Defendant SMITH is an individual and

11  citizen of Florida, where he is domiciled. During the relevant period, SMITH

12  worked as correctional officer at FCI Dublin in the Bureau of Prison's (BOP's)

13  employment. While performing the acts and omissions that Plaintiff alleges in this

14  complaint, SMITH was acting within the scope of his official employment, or with

15  the BOP's permission and consent.

16     21.    Upon information and belief, Defendant GARCIA is an individual and

17  citizen of California, where he is domiciled. During the relevant period, GARCIA

18  worked as the warden at FCI Dublin in the BOP's employment. While performing

19  the acts and omissions that Plaintiff alleges in this complaint, GARCIA was acting

20  within the scope of his official employment, or with the BOP's permission and

21  consent.

22     22.    Defendant United States is a governmental entity. During the relevant

23  period, the United States, through the BOP, a federal agency, was in possession and

24  control of FCI Dublin, a minimum-security federal prison located in Dublin,

25  California. The United States has waived sovereign immunity as to Plaintiff's tort

26  claims against Defendants, pursuant to FTCA, 28 U.S.C. § 2674.

27     23.    Plaintiff is ignorant as to the true names, identities, and capacities of

28  Defendants DOES 1 through 25, inclusive. Therefore, Plaintiff sues these

Defendants under the fictitious designation of DOES 1 through 25. Plaintiff will amend this Complaint once their identities have been ascertained as well as facts giving rise to their liability.

24.     Defendants Does 1-25, individually and in their official capacities, at all times relevant herein, were correctional officers and/or employees for the BOP, acting in their official capacity. These defendants include correctional officers in supervisory positions that participated in training VENEGAS and SMITH and other employees, in the supervision of VENEGAS and SMITH and other employees, and in reporting incidents of sexual abuse to the BOP.

## STATEMENT OF FACTS

**A.      PREA regulations provide mandatory procedures for preventing, reporting, investigating, and responding to reports of staff sexual abuse of an inmate.**

25.     PREA regulations require the BOP to have a strict "written policy mandating zero tolerance toward all forms of sexual abuse and sexual harassment and outlining the [BOP's] approach to preventing, detecting, and responding to such conduct," which the BOP has adopted.[1]

26.     PREA regulations also comprehensively mandate that the BOP and its correctional staff follow certain policies and procedures when an inmate has allegedly suffered sexual abuse.

27.     First and foremost, the BOP "shall require all staff to report immediately" "any knowledge, suspicion, or information regarding an incident of sexual abuse" and "staff neglect or violation of responsibilities that may have contributed to an incident or retaliation."[2] "Apart from reporting to designated supervisors or officials, staff shall not reveal any information related to a sexual abuse report to anyone other than to the extent necessary, as specified in agency

---

[1] *See* BOP Program Statement No. 5324.11, at 15 (Jan. 6, 2014); 28 C.F.R. § 115.11(b), (c).
[2] 28 C.F.R. § 115.61(a).

policy, to make treatment, investigation, and other security and management decisions."[3]

28.     Regardless of whether a report of sexual abuse is made, if an inmate is "subject to a substantial risk of imminent sexual abuse, [BOP employees] shall take immediate action to protect the inmate."[4]

29.     Upon receiving a report of inmate sexual abuse, the facility is required to report it to a designated internal investigator[5] and conduct an administrative or criminal investigation.[6] A criminal investigation is required for all allegations of inmate sexual abuse, "unless the allegation does not involve potentially criminal behavior."[7] All such referrals must be documented.[8]

30.     Given the high risk for retaliation against a reporter or victim, the BOP is required to "protect all inmates and staff who report sexual abuse or sexual harassment or cooperate with sexual abuse or sexual harassment investigations from retaliation by other inmates or staff and shall designate which staff members or departments are charged with monitoring retaliation."[9] A prison's PREA compliance manager must monitor an inmate sexual abuse victim for 90 days after a report of abuse is filed to ensure that he or she is not retaliated against by prison staff.[10]

31.     The BOP must also provide ongoing access to mental healthcare to all inmates who have been victimized by sexual abuse while detained in the facility.[11]

32.     The BOP is required to train every employee who may have contact with inmates to comply with the above PREA regulations and must "document,

---

[3] *Id.* § 115.61(b)
[4] *Id.* § 115.62
[5] *Id.* § 115.61(e)
[6] *Id.* § 115.22(a); *see also Id.* § 115.71
[7] *Id.* § 115.22(b)
[8] *Id.*
[9] *Id.* § 115.67(a).
[10] 28 C.F.R. § 115.67(c); BOP Program Statement No. 5324.11, at 44 (Jan. 6, 2014)
[11] *Id.* § 115.83(a), (b), (h).

through employee signature or electronic verification, that employees understand the training they have received."[12] In addition to this general training, specialized training is required for sexual abuse investigators.[13]

33.     Where an investigation finds that a staff member has engaged in sexual abuse, the presumptive disciplinary sanction is termination, and some form of discipline is required.[14]

34.     Finally, all documentation relating to an allegation of inmate sexual abuse must be maintained[15] and securely retained for at least ten years after the date of initial collection.[16]

35.     Defendants repeatedly violated these PREA regulations.

**B. Defendant VENEGAS routinely subjected Plaintiff to sexual abuse.**

36.     On approximately November of 2020, Plaintiff was moved to an isolated unit at FCI Dublin where she worked as an orderly cleaning rooms. It was during Plaintiff's isolation, and in violation of her civil and constitutional rights, VENEGAS, through his authoritative position over Plaintiff, began sexually harassing her. Over the next year, VENEGAS relentlessly harassed Plaintiff while she was trapped in the prison.

37.     VENEGAS took advantage of Plaintiff's isolation and would consistently approach her and make flirtatious remarks to her.

38.     VENEGAS manipulated Plaintiff by bringing her candy and snacks that were not available to her in prison. VENEGAS would bribe Plaintiff to go into his office where there were no cameras.

39.     Defendant VENEGAS made it clear that he favored certain inmates, and he allowed the inmates to go onto different units to visit their

---

[12] *Id.* § 115.31.
[13] *Id.* § 115.34.
[14] *Id.* § 115.76.
[15] *Id.* § 115.87(a), (d).
[16] *Id.* § 115.89(a), (d).

1   friends. Once they switched, he would exploit them for his own purposes.

2   VENEGAS offered to let Plaintiff go to a different unit, but she refused out of

3   fear of VENEGAS.

4       40.    About a year later, Plaintiff was isolated from everyone at FCI

5   Dublin, and was deprived of hot water, commissary, and computer usage.

6   Plaintiff's isolation was exacerbated by VENEGAS's increasingly blatant abuse.

7       41.    VENEGAS continued his sexual harassment of Plaintiff and made

8   comments like, "Has anyone ever told you that you have a voluptuous butt like J

9   LO?" This was unwelcomed, offensive, and nonconsensual.

10       42.    On one occasion, Plaintiff was leaning over an ice chest, and

11   VENEGAS rubbed his penis up against her back and buttocks. While

12   VENEGAS was assaulting her, he made an "mmm" sound and bit his lip.

13   Plaintiff was terrified to say anything because she feared his retaliation. For

14   instance, VENEGAS was known as "pocket boy" by staff and inmates because

15   when another inmate "disrespected him," VENEGAS forced her to hold his

16   pocket and walk next to him.

17       43.    VENEGAS's conduct is an example of some of the cruel and

18   unusual punishment that Plaintiff endured at FCI Dublin.

19   **C. CO SMITH routinely subjected Plaintiff to sexual abuse.**

20       44.    Defendant SMITH, a correctional officer at FCI Dublin, was known

21   throughout the prison as "Dirty Dick Smith." SMITH was notoriously perverted,

22   and he had an affinity for Mexican inmates.

23       45.    When Plaintiff was placed in quarantine due to the COVID-19

24   pandemic, SMITH sexually harassed and abused her for weeks. He liked

25   Plaintiff because she looks Hispanic. SMITH would tell Plaintiff about his trips

26   to strip clubs in Tijuana, and asked her to meet him at a strip club.

27       46.    SMITH would stand outside of Plaintiff's cell window to watch

28   her. SMITH also waited outside of the shower area in order to watch her.

47.     SMITH would make Plaintiff feel uncomfortable by standing behind her when she walked. He would stare at her buttocks and say, "mmm mmm mmm."

48.     Plaintiff felt humiliated and scared. Each time SMITH looked at Plaintiff in her vulnerable state, it was unwelcomed, offensive, and nonconsensual.

49.     SMITH's conduct is an example of some of the cruel and unusual punishment that Plaintiff endured at FCI Dublin.

**D. FCI Dublin is known for its culture of tolerating sexual misconduct.**

50.     Plaintiff alleges that other employees at FCI Dublin had a known pattern and behavior of sexually abusing her and female inmates. For example, Officer Williams (full name unknown at this time) would pat his lap and invite Plaintiff to sit down on it. CO Sergio Saucedo ("Saucedo") would verbally harass Plaintiff, and he taunted her about her personal romantic relationship. When Plaintiff told her family about the abusive environment at FCI Dublin, Saucedo cursed her out in front of the entire unit, and then cut off her communication for the next day.

51.     Based on information and belief, throughout the last three decades, the United States has repeatedly ignored incidents of sexual misconduct at FCI Dublin. Currently, five employees have been indicted by the Department of Justice for sexual misconduct, three have pled guilty, and nine other employees are on administrative leave pending investigation – the most in U.S. history of the Bureau of Prisons. The following examples are just a fraction of the magnitude of sexual misconduct and violence that transpired at FCI Dublin:

- In 1996, BOP officers took three female inmates from FCI Dublin to a male unit, opened their cell doors, and allowed male inmates to rape them.

- In the late 1990's and early 2000's, four male BOP employees were either convicted or pled guilty to sexually abusing female inmates at FCI Dublin.

- According to the U.S. Senate Report,[17] in the early 2010s, approximately a dozen Dublin employees were removed for their sexual abuse of inmates, "including one who videotaped himself having sex with inmates and stored those tapes in a prison locker. None were arrested."

- In 2019, an FCI inmate, Victoria Peterson, filed a suit against Officer William Martinez for abusing his power and using excessive force to have sex with her. She also sued the warden at the time, Wiley Jenkins, for failing to take disciplinary action against Martinez and allowing him to continue working at FCI Dublin.

- In 2019, inmate L.I. filed a claim against former FCI Dublin chaplain James Highhouse for sexual assault. Highhouse started having unwanted physical contact with L.I. in May of 2018, and although he was ultimately charged with abuse of L.I., prosecutors said he engaged in predatory conduct with at least six women from 2014 to 2019. Highhouse pleaded guilty and was sentenced to seven years in prison.

- Between approximately June of 2020 and September of 2020, inmate A.R. witnessed Klinger's sexual relationship with another

---

[17] JON OSSOFF & RON JOHNSON, S. REP., SEXUAL ABUSE OF FEMALE INMATES IN FEDERAL PRISONS (2022) (released in conjunction with the permanent subcomm. on investigations December 13, 2022 hearing).

THE PRIDE
LAW FIRM

inmate. She witnessed Klinger take women into a hidden areas to have sex with him. Klinger and CO Jaime Perez spoke with sexually explicit language toward A.R. CO Perez would bump up against her and grab her breasts. Officer Perez also took photos of A.R.

- Between approximately August 2020 and November 2020, inmate D.V. was pressured into an ongoing sexual relationship with FCI Dublin Correctional Officer Enrique Chavez. CO Chavez kissed her, touched her bare breasts and vagina, and had D.V. touch his penis. CO Chavez was known to bring inmates into the kitchen closet for "meetings."

- In 2021, CO Chavez sexually harassed another inmate, J.C., while was working in the kitchen. CO Chavez would brush his erect penis up against J.C. and said "look, it's hard for you." CO Chavez was charged with abusive sexual contact of a prisoner in violation of 18 U.S.C. § 2244(a)(4). He pled guilty to the conduct and was sentenced to 20 months in prison.

- Another inmate, A.J., suffered sexual abuse at FCI Dublin between approximately September 2021 and May of 2022. When A.J. arrived, Paramedic Fraser Cohen grabbed her breasts with no chaperone. Later throughout her incarceration, CO Nicholas Ramos consistently watched her in the shower, and both CO Ramos and CO Phillips made her strip, cough, and squat for cavity searches.

- From April through October 2020, Klinger manipulated inmate M.R. into performing oral sex and engaging in forced sexual intercourse.

- Saucedo watched inmate A.J. in the shower on multiple occasions. Saucedo ripped open the shower curtain while inmate L.C. was showering, causing her to fall over so he could see her naked body. Saucedo also sexually harassed L.C. by making sexual noises at her and squirting shampoo on her clothing, mimicking ejaculation. Additionally, inmate L.A. was sexually harassed by Saucedo when he forced her to bend over in front of him.
- Inmate D.S. was forced to engage in oral sex with nurse Jeff Wilson. Jeff Wilson also forced inmate L.A. to show him her breasts.
- Another inmate went to TDY (temporary duty) medical employee Jay Alexander (exact name unknown) for medical treatment on her back, and he pulled her underwear down and touched her buttocks and in between her inner thighs.
- Inmate G.M. was preyed upon by Disciplinary Hearing Officer (DHO) David Perez for over three years. David Perez would "make out" with G.M., touch her breasts, caress her, and make her believe he was her boyfriend. When G.M. was on probation, David Perez met up with her and had her touch his genitals.
- Another kitchen foreman, O'Connor (full name unknown) touched inmate N.P.'s buttocks and brushed his hand over her chest.
- CO Jones would tell inmate J.C. to "suck his dick" and he would tell her to "Get on your knees." CO Jones would grab his genitalia and tell her to "look."

52.     Upon information and belief, at least 22 FCI Dublin employees, including those who courageously reported and/or acted to prevent instances of sexual violence, have been reassigned to other prisons. This reassignment got

the attention of Congresswoman Jackie Speier, who wrote a letter to the new Director of the Federal Bureau of Prisons, Colette Peters, requesting information about FCI Dublin's "culture of rampant sexual misconduct and subsequent cover-ups."[18]

53.     In December 2022, the United States Senate reported on the Permanent Subcommittee on Investigations findings from its investigation into sexual abuse of female prisoners in custody of the BOP. The report found that in at least four BOP facilities (FCI Dublin being one of them), multiple women endured ongoing sexual abuse for months or years. The report's conclusion stated, "BOP failed to detect or prevent sexual abuse of incarcerated women by male BOP employees. The agency's poor implementation of the audit program and reporting mechanisms required by PREA allowed serious, repeated sexual abuse in at least four facilities to go undetected. BOP's internal affairs practices have failed to hold employees accountable, and multiple admitted sexual abusers were not criminally prosecuted as a result. Further, for a decade, BOP failed to respond to this abuse or implement agency-wide reforms. Moving forward, BOP should consider the Subcommittee's findings as it works to implement changes to how it handles sexual abuse of female prisoners by male BOP employees."[19]

54.     On April 23, 2023, a grand jury indicted Defendant SMITH with 12 counts of sexual abuse of a ward, aggravated sexual abuse, and abusive sexual contact. Upon information and belief, SMITH had sex with at least two inmates, and touched at least three inmates' buttocks and breasts. At least four other inmates were targeted and terrorized by SMITH when he watched them undress.

55.     Defendant GARCIA was found guilty of three counts of having sexual contact with an incarcerated person, four counts of abusive sexual contact

---

[18] Fox2KTVU Reporter Lisa Fernandez: https://www.ktvu.com/news/dublin-prison-guard-says-she-was-forced-out-for-reporting-abuse
[19] JON OSSOF & RON JOHNSON, S.REP., SEXUAL ABUSE OF FEMALE INMATES IN FEDERAL PRISONS (2022) (released in conjunction with the Permanent Subcomm. on Investigations December 13, 2022 hearing).

THE PRIDE
LAW FIRM

and one count of lying to the FBI. GARCIA was sentenced to 5 years and 10 months in prison. Former CO Ross Klinger pled guilty to federal criminal charges for Sexual Abuse of a Ward (18 U.S.C. § 2243(b)) stemming out of his conduct against two other inmates and he is awaiting sentencing. CO John Bellhouse currently faces a six-count Grand Jury indictment for sexually abusing female inmates. His jury trial is set for June 5, 2023. Additionally, in March of 2022, Defendant SAUCEDO and CO Nicholas Ramos were placed on leave as a result of sexual misconduct allegations. CO Ramos committed suicide on August 21, 2022.

56. Defendant United States failed to provide the sexual abuse victims with counseling services or victim advocates. The victims were retaliated against with interviews and examinations after filing their Federal Tort Claims. As a result of reporting the misconduct, the victims were put in the Solitary Housing Unit (SHU), received daily room tosses, and were placed on lock downs. The victims also had their phone calls and visitations taken away, their legal mail was read, and their legal phone calls were monitored.

## CLAIMS FOR RELIEF

### CLAIM ONE

### EIGHTH AMENDMENT, CRUEL AND UNUSUAL PUNISHMENT – SEXUAL ABUSE

### (Against VENEGAS, SMITH, GARICA, and DOES 1-25, inclusive, in their individual capacities)

57. Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

58. Plaintiff brings this claim under the Cruel and Unusual Punishment Clause of the Eighth Amendment to the U.S. Constitution against VENEGAS, SMITH, GARICA, and DOES 1-25, inclusive, in their individual capacities.

59.    At all material times, VENEGAS, SMITH, GARCIA, and DOES 1-25, inclusive, were federal employees of the BOP at FCI Dublin, acting under the color of federal authority with respect to the allegations in this complaint.

60.    VENEGAS and SMITH violated Plaintiff's right to be free from cruel and unusual punishment by repeatedly sexually abusing her while she was incarcerated as a minimum-security inmate at FCI Dublin.

61.    VENEGAS and SMITH's sexual abuse of Plaintiff occurred under coercive circumstances.

62.    By intentionally subjecting Plaintiff to sexual acts, VENEGAS and SMITH acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

63.    The inhumane conditions of confinement caused by VENEGAS and SMITH's repeated sexual abuse caused Plaintiff severe physical, mental, and emotional harm.

64.    GARCIA was the warden during the majority of the period that Plaintiff was being abused by VENEGAS and SMITH. As the warden, GARCIA was responsible for safekeeping, care, protection, discipline, programming, and release of inmates incarcerated at FCI Dublin. GARCIA was also responsible for hiring, training, and supervising/managing staff, and determining operating procedures and policies.

65.    GARCIA was also sexually abusing wards at FCI Dublin, and in his capacity as warden, thus ratified VENEGAS and SMITH's behavior. GARCIA led PREA training and chaired the audit of FCI Dublin under the PREA. Thus, the man responsible for teaching inmates how to report rape was in fact a serial rapist of inmates.

66.    GARCIA accepted guilt for his sexual abuse of other inmates, and GARCIA knew or should have known that VENEGAS and SMITH were sexually abusing Plaintiff.

67.     VENEGAS, SMITH, GARCIA, and DOES 1-25, inclusive, acted with malice and oppression, and his conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling Plaintiff to punitive damages.

68.     Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

## CLAIM TWO

### GENDER VIOLENCE (Cal. Civ. Code § 52.4)

### (Against VENEGAS and SMITH in their individual capacities)

69.     Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

70.     Plaintiff brings this claim for gender violence under California Civil Code § 52.4 against VENEGAS and SMITH in their individual capacities.

71.     Under California statute, any person subjected to gender violence may bring a civil action for damages against the responsible party. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

72.     VENEGAS and SMITH discriminated against Plaintiff based on her female gender when they repeatedly sexually abused her, by physically subjecting her to sexual acts, under the coercive conditions that were present between them.

73.     VENEGAS and SMITH's actions occurred outside the course and scope of their employment. Their actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in his decision to sexually

1   abuse Plaintiff.

2   74.   By repeatedly subjecting Plaintiff to sexual acts, VENEGAS and

3   SMITH caused her to suffer physical, mental, and emotional injuries, as well as

4   injuries to her personal dignity.

5   75.   VENEGAS and SMITH acted with malice and oppression and his

6   conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling

7   her to punitive damages.

8   76.   Plaintiff seeks the following relief for her injuries: (a) nominal

9   damages resulting from the repeated violations of her personal dignity and from

10  physical injury; (b) non-economic damages consisting of past physical injury,

11  past and future mental pain and suffering, mental anguish, emotional distress,

12  and for offenses to her personal dignity; and (c) punitive damages.

13  77.   Plaintiff also seeks attorneys' fees and costs, as expressly

14  authorized by statute.

15  **CLAIM THREE**

16  **SEXUAL ASSAULT (Cal. Civ. Code § 1708.5)**

17  **(Against VENEGAS and SMITH in their individual capacities)**

18  78.   Plaintiff repeats and incorporates by reference every allegation

19  contained in the preceding paragraphs as if fully set forth herein.

20  79.   Plaintiff brings this claim for sexual assault under California Civil

21  Code § 1708.5 against VENEGAS and SMITH in their individual capacities.

22  80.   VENEGAS and SMITH violated Plaintiff's statutory right to be

23  free from sexual assault by repeatedly sexually abusing her while she was

24  incarcerated as a minimum-security inmate at FCI Dublin.

25  81.   VENEGAS and SMITH's sexual abuse of Plaintiff occurred under

26  coercive circumstances.

27  82.   For these reasons, VENEGAS and SMITH's sexual abuse of

28  Plaintiff, an inmate in the custody of their employer, was deeply offensive to her

THE PRIDE
LAW FIRM

personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

83.     Given the deeply offensive nature of these sexual acts and lack of any possible penological justification for these sexual acts, VENEGAS and SMITH must have subjected Plaintiff to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff's person.

84.     By intentionally subjecting Plaintiff to sexual acts, VENEGAS and SMITH acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

85.     VENEGAS and SMITH's actions occurred outside the course and scope of their employment. Their actions and judgment in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in their decision to sexually abuse Plaintiff.

86.     By repeatedly subjecting Plaintiff to sexual acts, VENEGAS and SMITH caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

87.     VENEGAS and SMITH acted with malice and oppression, and his conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

88.     Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

## CLAIM FOUR

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (California common law)

### (Against VENEGAS and SMITH in their individual capacities)

89.     Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

90.     Plaintiff brings this claim for intentional infliction of emotional distress under California common law against VENEGAS and SMITH in their individual capacities.

91.     VENEGAS and SMITH engaged in outrageous conduct by repeatedly subjecting Plaintiff to sexual acts while she was incarcerated as an inmate in his employer's custody. VENEGAS and SMITH abused their authority over Plaintiff and their power to affect her interests in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

92.     VENEGAS and SMITH's sexual abuse caused Plaintiff to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

93.     VENEGAS and SMITH intended to cause Plaintiff this emotional distress because he knew that emotional distress was certain to result from their sexual abuse of an inmate.

94.     VENEGAS and SMITH's actions occurred outside the course and scope of his employment. Their actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in their decision to sexually abuse Plaintiff.

95.     VENEGAS and SMITH acted with malice and oppression, entitling Plaintiff to punitive damages.

96.     Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

## CLAIM FIVE

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (California common law)
### (Against VENEGAS and SMITH in their individual capacities)

97.     Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

98.     Plaintiff brings this claim for negligent infliction of emotional distress under California common law against VENEGAS and SMITH in their individual capacities.

99.     VENEGAS and SMITH had a special and heightened duty of care to Plaintiff as her jailer that required them to protect her against reasonably foreseeable emotional harm, including from sexual abuse. PREA regulations and BOP policy prohibiting sexual abuse confirm this special and heightened duty.

100.    Alternatively, VENEGAS and SMITH had a general duty of care with respect to Plaintiff.

101.    VENEGAS and SMITH engaged in negligent conduct and in a willful violation of statutory standards. On multiple occasions, VENEGAS and SMITH breached their duty of care and the PREA regulations by purposefully and willingly subjecting Plaintiff to sexual acts. VENEGAS and SMITH's breach of their duty of care and willful violations of statutory standards were directed at Plaintiff.

102.   By repeatedly subjecting Plaintiff to sexual acts, VENEGAS and SMITH proximately caused her to suffer, and to continue to suffer, serious and severe emotional distress.

103.   Plaintiff's emotional reactions are not an abnormal response to her sexual abuse. A reasonable person would be unable to cope with the mental distress caused by being sexually abused by a BOP employee who had a duty to protect her from such abuse. No reasonable person in a civilized society should be expected to endure that kind of mental distress.

104.   VENEGAS and SMITH's actions occurred outside the course and scope of their employment. Their actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that they could not have been making a policy judgment in their decision to sexually touch Plaintiff.

105.   VENEGAS and SMITH acted with malice and oppression, and their conduct constitutes a reckless or callous disregard of Plaintiff rights, entitling her to punitive damages.

106.   Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

## CLAIM SIX

### BATTERY (California common law)

### (Against VENEGAS in his individual capacity)

107.   Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

108.   Plaintiff brings this claim for battery under California common law

1    against VENEGAS in his individual capacity.

2        109.    VENEGAS committed battery against Plaintiff by repeatedly

3    sexually abusing her while she was incarcerated as a minimum-security inmate

4    at FCI Dublin.

5        110.    VENEGAS's sexual abuse of Plaintiff occurred under coercive

6    circumstances.

7        111.    For these reasons VENEGAS's sexual abuse of Plaintiff, an inmate

8    in the custody of his employer, was deeply offensive to her personal dignity,

9    would offend a person of ordinary sensitivity, and was unwarranted by the social

10   usages in prison when the contact was made.

11       112.    Given the deeply offensive nature of these sexual acts and lack of

12   any possible penological justification for these sexual acts VENEGAS must

13   have subjected Plaintiff to these sexual acts with the intent to cause a harmful or

14   offensive contact with Plaintiff's person.

15       113.    By intentionally subjecting Plaintiff to sexual acts VENEGAS

16   acted maliciously in a manner that is deeply offensive to human dignity and void

17   of any penological justification.

18       114.    VENEGAS's actions occurred outside the course and scope of his

19   employment. His actions and judgments in sexually abusing Plaintiff were so far

20   below the acceptable standard of custodial conduct, as exemplified by PREA

21   regulations and BOP policy prohibiting sexual abuse, that he could not have

22   been making a policy judgment in his decision to sexually abuse Plaintiff.

23       115.    By repeatedly subjecting Plaintiff to sexual acts, VENEGAS caused

24   her to suffer physical, mental, and emotional injuries, as well as injuries to her

25   personal dignity.

26       116.    VENEGAS acted with malice and oppression, and his conduct

27   constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to

28   punitive damages.

117.   Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

## CLAIM SEVEN

## EIGHTH AMENDMENT, DELIBERATE INDIFFERENCE – FAILURE TO PROTECT

**(Against GARCIA and DOES 1-25, inclusive, in their individual capacities)**

118.   Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

119.   Plaintiff brings this claim against GARCIA and DOES 1-25, inclusive, in their individual capacities under the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution.

120.   At all material times, GARCIA and DOES 1-25, inclusive, were federal employees, acting under the color of federal authority with respect to the allegations set forth above.

121.   GARCIA and DOES 1-25, inclusive, deprived Plaintiff of her right to be free from cruel and unusual punishment by failing to protect her from a substantial risk of serious harm from sexual abuse by VENEGAS and SMITH, by acting in conscious disregard of that known risk.

122.   GARCIA, as the warden, ratified VENEGAS and SMITH's conduct by engaging in the same or similar acts as VENEGAS and SMITH with other inmates at FCI Dublin. Therefore, GARCIA purposefully denied Plaintiff protection from the known and substantial risk of serious harm of VENEGAS and SMITH's sexual abuse.

123.   Based on his position and behavior in the prison, GARCIA knew or should have known that VENEGAS and SMITH were abusing Plaintiff.

124. GARCIA and DOES 1-25, inclusive, failed to take immediate action to protect Plaintiff, including by separating her from VENEGAS and SMITH, in violation of 28 C.F.R. § 115.62.

125. GARCIA and DOES 1-25, inclusive, did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff, and to guarantee her safety, even though a reasonable officer in the circumstances would have appreciated the obviously high degree of risk involved.

126. GARCIA and DOES 1-25, inclusive, therefore acted with deliberate indifference to substantial risk of sexual abuse in violation of the Eighth Amendment, subjected Plaintiff to dangerous and debasing conditions of confinement, including sexual abuse, and violated her fundamental rights to safe and humane confinement. This cruel and unusual punishment caused Plaintiff physical, mental, emotional, and constitutional injuries.

127. GARCIA and DOES 1-25's, inclusive, deliberate indifference was malicious, oppressive, reckless, and callous, entitling Plaintiff to punitive damages.

128. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

**FEDERAL TORT CLAIMS ACT ADMINISTRATIVE EXHAUSTION**

129. Claims EIGHT and NINE, below, are asserted against the United States.

130. Plaintiff has exhausted these claims against the United States under the FTCA.

131. Plaintiff submitted a "Claim for Damage Injury, or Death" to the BOP for "permanent injuries, mental anguish, embarrassment, humiliation, pain,

distress, and damages" as a PREA victim involving staff at FCI Dublin in the sum of $5,000,000.00.

132.   A true and correct copy of Plaintiff's FTCA claim is attached hereto as **Exhibit A**.

133.   The BOP received her administrative claim on October 26, 2022.

134.   A true and correct copy of the BOP's acknowledgment is attached hereto as **Exhibit B**.

135.   By April 26, 2023, six months after the BOP received Plaintiff's administrative claim, the BOP has neither accepted nor rejected the claims. Pursuant to 28 U.S.C. § 2675(a), Plaintiff elects to consider this failure to act as a final denial of her claim.

## CLAIM EIGHT

### NEGLIGENCE (FTCA, California common law)

### (Against the United States)

136.   Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

137.   Plaintiff brings this claim against the United States under the FTCA based on the actions and/or omissions of VENEGAS, SMITH, GARCIA, and DOES 1-25, inclusive, taken while working at FCI Dublin in their capacities as employees of the BOP and acting within the scope of their employment, with the permission and consent of the United States.

138.   At all material times, Plaintiff was an inmate in the custody of the BOP, a federal agency of the United States in possession and control of FCI Dublin.

139.   **Duty**. VENEGAS, SMITH, GARCIA, and DOES 1-25, inclusive, had a custodial duty, as well as a mandatory statutory obligation under PREA regulations and BOP policy, to protect inmates incarcerated by the United States from foreseeable harm, including, but not limited to, harm from sexual abuse.

140.   The BOP's Personal Conduct rules for staff disallow any sexual activity with an inmate, and state that an employee may not allow another person to engage in such behavior. It explicitly states that there is no such thing as consensual sex between staff and inmates.

141.   Alternatively, VENEGAS, SMITH, GARCIA, and DOES 1-25, inclusive, had a general duty of care to Plaintiff.

142.   VENEGAS and SMITH's sexual abuse of Plaintiff was reasonably foreseeable to the United States because VENEGAS and SMITH's conduct made it obvious they were sexually abusing Plaintiff.

143.   **Breach of duty—inadequate supervision**. The United States failed to supervise and operate FCI Dublin in a manner that would have prevented VENEGAS and SMITH's ongoing sexual abuse of Plaintiff.

144.   The United States did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff, and to guarantee her safety, even though a reasonable administrator would have complied with PREA regulations regarding proper prison operations, including adequately monitoring work programming and correctional officer assignments.

145.   VENEGAS and SMITH's sexual abuse of Plaintiff occurred as the direct and proximate result of the supervisory negligence of the United States.

146.   **Injuries and relief sought**. Plaintiff suffered a physical violation, a violation of her liberty interest in being free from sexual abuse, injury from being denied freedom of movement and programming, and severe mental and emotional anxiety and distress, and will continue to suffer severe mental and emotional anxiety and distress in the future.

147.   Plaintiff seeks the following relief for her injuries: non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity.

THE PRIDE
LAW FIRM

## CLAIM NINE

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (FTCA, California law)

### (Against the United States)

148.   Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

149.   Plaintiff brings this claim against the United States under the FTCA based on the actions and/or omissions of VENEGAS, SMITH, GARCIA, and DOES 1-25, inclusive, which were taken while working at FCI Dublin in his capacity as an employee of the BOP and acting within the scope of his employment, with United States' permission and consent.

150.   At all material times, Plaintiff was an inmate in the custody of the BOP, a federal agency of the United States in possession and control of FCI Dublin.

151.   **Duty**. VENEGAS, SMITH, GARCIA, and DOES 1-25, inclusive, had a custodial duty, as well as a mandatory statutory obligation under PREA regulations and BOP policy, to protect inmates incarcerated by the United States from foreseeable harm, including, but not limited to, harm from sexual abuse.

152.   **Breach of duty—inadequate supervision**. The United States failed to supervise and operate FCI Dublin in a manner that would have prevented VENEGAS and SMITH's ongoing sexual abuse of Plaintiff.

153.   The United States did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff, and to guarantee her safety, even though a reasonable administrator would have complied with PREA regulations regarding proper prison operations, including adequately monitoring work programming and correctional officer assignments.

154.   VENEGAS and SMITH's sexual abuse of Plaintiff occurred as the direct and proximate result of the supervisory negligence of the United States.

155.   **Injuries and relief sought**. VENEGAS, SMITH, GARCIA, and DOES 1-25, inclusive, actions and omissions caused Plaintiff to suffer, and continue to suffer, serious and severe emotional distress, including fear, depression, and anxiety, because of being repeatedly sexually abused.

156.   Plaintiff's emotional reaction was not an abnormal response to her sexual abuse. A reasonable person would be unable to cope with the emotional distress caused by being sexually abused by a correctional officer, who had a duty to protect her from such abuse. Plaintiff's distress was of such a substantial and enduring quality that no reasonable person in a civilized society should be expected to endure it.

157.   By reason of the United States' negligent infliction of emotional distress Plaintiff has suffered severe emotional distress, and will continue to suffer severe mental and emotional anxiety and distress.

158.   Plaintiff seeks nominal and compensatory damages for these violations.

### DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all claims so triable.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court grant the following relief:

1.   Nominal damages in an amount to be determined at trial;

2.   Compensatory damages for injuries caused by a violation of her constitutional rights and personal dignity, physical injury, pain, discomfort, fears, anxiety, and other mental and emotional distress suffered by Plaintiff and for similar suffering reasonably certain to be experienced in the future, in an amount to be determined at trial;

3.   Punitive damages for malice, oppression, and reckless and callous disregard of Plaintiff's rights;

4.   An award to Plaintiff of reasonable costs; and

1      5.      An award to Plaintiff of reasonable attorneys' fees pursuant to 28

2              U.S.C. § 2678 and Cal. Civ. Code § 52.4; and

3      6.      Such other and further relief as the Court may deem fit and proper.

4                                          Respectfully Submitted,

5

6    Dated: May 12, 2023                    **THE PRIDE LAW FIRM**

7                                          /s/ Jessica K. Pride

8                                          Jessica K. Pride
                                           Email: jpride@pridelawfirm.com
9                                          Attorneys for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 30 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL